Four cases to be submitted today on oral argument. We'll hear the first two cases and then take a brief recess and then finish with the final two. And we begin with the United States v. Quintanilla. Mr. DeMaria. Thank you, Your Honor. May it please the court, Daniel DeMaria for Alveo v. Quintanilla. I'd like to reserve five minutes for rebuttal. This appeal turns on a single principle that runs through every issue. A sentence must rest on reasons the sentencing court actually gave. And here, on each issue, the record is silent where the law required explanation. The government will not dispute what occurred below, but it defends the judgment based on rationales the district court judge never articulated. And I would respectfully submit this court cannot affirm on that basis. I'll begin with the appellate waiver. On the waiver, during the Rule 11 colloquy, the district court affirmatively told Mr. Quintanilla that under some circumstances, he could appeal any sentence. That was not an omission. There was an omission as well. The judge never took the defendant through the appellate waiver, but it was actually a misstatement that under some circumstances, you can appeal any sentence. And those words are broad. First of all, some circumstances implies more than one circumstance. You or the government implies it's something more than just ineffective assistance of counsel. I would argue as well, based on United States v. Bigelow, that an oral pronouncement controls overwritten plea agreement. And under Jacobs and Bond, where an oral pronouncement conflicts with the defendant's potential understanding, what was said in open court must govern. And at a minimum, I would argue that ambiguity must be construed against the government. I don't believe this has ever happened in the Fifth Circuit, but we have Buchanan from the Ninth Circuit, Wood from the Fourth, Saperstein from the Third, and Brown from the District Court of Columbia. And finally, the prosecutor heard the misstatement. He was standing or sitting right there. He heard the misstatement. He didn't jump up. He didn't object. Do we overlook the fact that it said under some circumstances? Your Honor, if he had got a sentence less than the maximum possibly, but in this situation where he got the max sentence and the max supervised release, I don't think we can overlook that at all. I mean, if there were any possible circumstance, a 21-year-old defendant being sentenced to the statutory maximum for a first offense, that would be it. I'd like to clarify the specific issue, counsel. Are you alleging a failure to address the waiver or only that the statement was misleading? You seem to say in your reply that it's only that the statement was misleading, but your opening brief could be read either way. My main point, Your Honor, is that the statement was absolutely misleading. But the judge should have also drawn Mr. Quintanilla's attention to the appellate waiver, and he did not. So it's both an omission, which I'm not as concerned about. If it was just an omission, then I think the court could say, well, he read the plea agreement. He said he read the plea agreement. It's all fine and dandy, but I'm going one step further in saying the misstatement is a very, very significant issue. Why is this not more analogous to an omission since the statement was made in the context of an understanding of the sentencing guidelines? He didn't say, let's talk about your appellate waiver. He was talking about whether both defendants, Mr. Quintanilla and the other defendant, understood the sentencing guidelines and then made this statement generally. So why isn't this more an omission case since there was never any discussion of the appellate waiver or appellate rights? I would just argue that when a 21-year-old defendant, when he's on the record and the judge is making sure that his plea is known and voluntary, taking him through the Rule 11 colloquy, that it was a central thing. Mr. Quintanilla, as he's deciding to go forward with the plea, is hearing that you can appeal any sentence. At this point, he knows that his guideline is absolutely astronomical, and I think it played into the calculus. And it really was, I don't think there's any way to read the record other than it was a misstatement. Certainly as to Mr. Quintanilla, I don't know about the other gentleman. And the fact that two defendants were rearranged at the same time, the judge used the word that he didn't want to run through the same basic script twice. But I would argue that was absolutely a misstatement and that it was not simply an omission. And the bulk of my appeal is challenging his sentences while you're on it. So I believe this was the expectation Mr. Quintanilla had when he took absolute responsibility for his wrongdoing and decided to enter into a plea. Well, back to Judge Smith's question. How is the statement inaccurate? Isn't it true that in some circumstances a defendant can appeal any sentence despite an appellate waiver, for example, in the ineffective assistance of counsel context? I mean, then I would point, Your Honor, first that circumstances is plural. It implies more than just ineffective assistance of counsel. But secondly, when he hears you or the government may appeal, the government cannot appeal, as we all know, for ineffective assistance of counsel, obviously. And so I think when you read the entire sentence in context, it is absolutely misleading. If the court had exceeded the statutory maximum, would that have been a circumstance in which the defendant could appeal any sentence? Yes, Your Honor. But I don't think it would have reasonably respectfully have been interpreted that way. But yes, if the court had exceeded it, it would be an illegal sentence. So I suppose so, Your Honor. So if you've got a sentence exceeding the statutory maximum or ineffective assistance of counsel, isn't that two circumstances, plural? It is, Your Honor. But also when you hear the words, can appeal any sentence, ineffective assistance of counsel is the last thing from my mind. That would be in the 2255 realm. It wouldn't be an appeal, so to speak. I don't think anyone considers a 2255 as an appeal. So I really would say, and based on the out-of-circuit law, that the waiver was misleading to Mr. Quintanilla. And so I would then turn to the sentence Mr. Quintanilla received. He received a 240-month sentence, which I argue is both substantially and procedurally unreasonable. The government themselves requested 216 months. And so knowing everything about Mr. Quintanilla, knowing about abuse which had occurred, about the exact nature of the conduct, the government basically stood up and said 216 months. That's what they had in their sentencing recommendation in writing before the plea as well. And nevertheless, the judge imposed 240 months. Now, sure, that was within the guidelines. And as the court knows, the guidelines in these cases are absolutely astronomical. And basically, in the vast majority of cases, the same guidelines apply. Prepubescent minor, exchange for valuable consideration, sadistic, masochistic conduct, pattern, using a computer, and more than 600 images. So in the vast majority of cases, you have all these enhancements. And I would first argue that the judge did not explain. And reading the record, it's not even clear if the judge had read the sentencing memorandums before taking the bench. It almost seemed to me as though he was reviewing it while on the bench. And part of the reason I say that is he even asked counsel, hey, is your client 21 years old, which would have been front and center in the sentencing memorandum. And I just had the impression he was skimmed it from the bench. But he really gave absolutely no reasoned basis. He said a lot of time was put in on this, that such cases deserve the time. And the time, I think he meant the time in court, not the prison sentence. And then he just said, I've considered section 3553A. And so really, the judge touched on all the magic words. But he never actually articulated why a maximum sentence for a 21-year-old defendant, criminal history category one, prompt acceptance of responsibility, not just with his plea, but when customs and border stopped him at the border coming back from vacation, he candidly admitted everything and more. He was compliant on release. He was employed in counseling, no violations. And he had a documented mental health history. And so on these facts, the court should have articulated for the record why it was going straight to the maximum. And again, Adam, maybe the case would be different if the government had jumped up and down. Hey, he deserves 240, judge. Give him 240. But when the government itself, the party seeking punishment, is simply asking for 216, which is still a darn long time for a 21-year-old man who's never been in trouble, I think it's incumbent that the judge actually give reasons as to why 220 is more appropriate than 216 months. When the government argued for 216 months, didn't the judge say, but what about the two minor victims and discuss that? I mean, did the judge mention the minor victims twice? It impacted him. Yes, Your Honor. It absolutely did. And the government answered. And I believe that was at page 18. But the government answered, that's why it viewed an extensive term as necessary. And the government still recommended the 216. The government was absolutely fully aware of that when it recommended 216. And when the judge pointed that out, the AUSA didn't say, well, golly, you know, I overlooked that. Or on reflection, judge, you're right. He should get 240. The AUSA stuck to his guidance and said 216 months. And so I believe that addresses that, Your Honor. Could it also be an indication of the judge's disagreement, given the extent? I mean, the judge specifically mentioned that the abuse had happened over eight years and that it started when one of the victims was four years old. I mean, the judge was specific about that. It seemed to me, Your Honor, that that was more than just questioning the AUSA rather than articulating reasons. I think when you're imposing such a long sentence on a human being, it's incumbent, especially a 21-year-old who's never been in trouble before, it's incumbent for the judge to say more than just, well, a lot of time has been put into it, to potentially just skim the sentencing memorandum and then to ask a question or two of the parties. And so I would argue these guidelines are manifestly unfair. I argued Jenkins in the Second Circuit. We have Dorvay. I know this court hasn't been as receptive to these arguments. But I have a very, very minor ask. And it's basically send it back down to the district court. That way, the district court judge can revisit and give proper reasons. And perhaps in coming to proper reasons, the court may think, hey, you know, 240 was too much. 216 is more appropriate or another thing. So I'm not even asking this court to re-weight 3553A or anything, just to remand it so that the judge can reconsider anew. And I will just emphasize as well that acknowledging defense counsel's submissions is not the same as actually addressing what defense counsel is saying, at least in Sanchez from this court. The court at least stated that it had considered counsel's arguments, whereas here the transcript never does that. He just simply quickly runs through everything. So in sum, and I'm also arguing in my brief, I want you great things to argue that lifetime supervised release was not proper. And same thing there. The judge never articulated. That's the whole theme through this whole thing, why a lifetime term versus a long finite term was appropriate. Same with restitution. The judge did not give reasons. So basically we have a 21-year-old first-time offender who got more than the government asked for, plus lifetime supervision and a restitution order, all without explanation. The law requires reasons, and there simply are none in this record. The remedy is modest vacate and remand. And if there are no questions, Your Honor, I would rest subject to my rebuttal. Yes. You save time for rebuttal. Thank you, Mr. Kintania. Thank you, Your Honor. Mr. Reed. Good morning, Your Honors. May it please the Court. John Reed on behalf of the United States. Your Honors, Mr. Kintania's sentence should be affirmed for essentially three reasons. One, the appellate waiver bars the first three issues that he's raised challenging his sentence. Two, those issues all fail on their merits. And three, to the extent the restitution order is addressed outside of the waiver, it fails and the defendant has not shown any error, let alone plain error. Starting with the appellate waiver and reasonableness of the sentence, Judge Ramirez, through her questioning of Mr. DeMaria, really made the points I was intending to make as well. This Court's precedent is clear that when a plea agreement contains a clear and unambiguous waiver, when the defendant indicates that he has read the plea without the waiver, the waiver is enforceable. The statement from the district judge that you understand under some circumstances you or the government may appeal any sentence is not a categorical assurance that Mr. Kintania retained all of his appellate rights. On the contrary, the Court used conditional language under some circumstances. That is not an incorrect statement when you compare it to the plea agreement. I think the government's position is, as Judge Ramirez suggested, this case is more an omission rather than a misstatement or a mischaracterization of the plea agreement. The Court undisputably did not say you have a waiver, this is what the appellate waiver says. It omitted that part of it. However, we're on plain error review, there was no objection, and under this Court's decisions like Higgins and Portillo and McKinney, et cetera, et cetera, et cetera, numerous appeal waivers have been enforced under those circumstances. Mr. Kintania relies on out-of-circuit cases and at least one case from this Court, Batty, where appellate waivers were not enforced. Those cases are very much distinguishable. First of all, in Batty, this Court's decision, the defendant asked multiple questions about the waiver, tried to get an explanation. The district court failed to sufficiently explain it. This Court said the waiver was therefore unknowing and involuntary. It was not enforced. The statements at issue in cases like the Fourth Circuit Wood and Saperstein and the Third Circuit and so forth, I don't want to call the statements more egregious or more direct in what the Court conveyed to the defendant. The Fourth Circuit case in Wood, the defendant and the government agreed to a certain drug quantity in the plea agreement, but the district court, in the Fourth Circuit's words, repeatedly told the defendant drug quantity would be litigated later and you can address it at sentencing. Then when they got to sentencing, they said, oh, wait a minute, you stipulated, you waived it. Fourth Circuit said the statement by the district court was sufficiently pervasive to affect the defendant's understanding. We don't have that here. We have a sort of statement in the middle of the rearrangement that uses conditional language and references the possibility of an appeal. To the extent that raises ambiguity, as Mr. Quintanilla's counsel suggested, well, then the oral pronouncement controls. Well, that's borrowing a principle from the sentencing context, and Bigelow is a sentencing decision that addresses a district court's oral pronouncement versus the written judgment. That, to me, seems inapplicable here. But to the extent there's ambiguity or a Rule 11 error in either situation, however you want to look at it, you look to the entire record to determine the effect of the statement. And if you look to the entire record, not only did Mr. Quintanilla not raise any questions during the rearrangement, when the PSR came out and said there was an appeal waiver, he didn't object, didn't raise any questions at sentencing, as the defendant did in Wood, he didn't try to withdraw his plea. This supports the idea that he was not misled, and he understood what was happening in the plea agreement. The Ninth Circuit decision in – it begins with a B. I'm blanking on the name. Buchanan. The Ninth Circuit decision in Buchanan, also very different, the defendant there pleaded guilty, wanted to appeal his sentence, and tried to withdraw the plea. They held two sentencing hearings, both of which the district court assured the defendant that he could appeal his sentence. Again, you have repeated assurances. Very different from this case. The appeal waiver should be enforced in this instance. And what's our standard of review on that in this case? It's plain error, Your Honor, because, well, just the enforceability of an appeal waiver is de novo, but to the extent it's a Rule 11 error and an omission, it would be plain error because he didn't object. But, yeah, this court in Keele said determining the enforceability of a waiver would be de novo. But to the extent there's a Rule 11 error because the district court misspoke or failed to address the waiver, I think that would be plain error. The Jacobs decision, by the way, just touching on that briefly, the defendant relies on that a great deal. The voluntariness and knowing nature of the waiver was not at issue in that case. The defendant conceded the waiver was knowing and voluntary, and he was arguing that it didn't apply to the circumstances in that case. So there's some suggestions in that case I think would be dicta, but there's no question in my mind that this waiver should be appealed. But if the court has any hesitancy, it can do what it often does and pretermit deciding the issues of enforceability because the issues fail on their merits very easily under this court's well-established precedent. Mr. Quintanilla emphasized multiple times that this is a 21-year-old man with no criminal history, and yet he got the statutory maximum. That's only partially true. He got the guideline sentence. He scored at 360 months to life, capped statutorily at 240, so that was the guideline sentence, which is afforded a presumption of reasonableness. The district court just has to, well, to the extent that he's arguing the guideline sentence was based on enhancements that appear in many child pornography offenses, that may be true, but this court has already rejected that argument in Miller, which is cited in my brief. This court rejected it and said the guidelines are the guidelines. It's up to the sentencing commission to change them. He has not argued the guidelines were incorrectly calculated, so we have a guideline range. Focusing on the defendant's age and criminal history just is a disagreement with how the court weighed the factors, and that is insufficient to show that the sentence is reasonable substantively. To the extent the complaint is lack of explanation, the explanation is readily apparent in the record when you look at the colloquy. The court has to say enough to show that it considered the party's arguments and had a reasoned basis for imposing the sentence that it did, and when it's a guideline sentence, little is usually required. The district court here went through the arguments of both parties. He went through the sentencing memorandum that defense counsel submitted. He went through each of the character letters. There were multiple character letters. He went through each of them and said who they were from and highlighted something from them. That is a clear indication that the court is considering the arguments of the defense. When the court addressed the AUSA and asked for his recommendation, the AUSA said, well, yes, we recommend 216 months. That's 18 years, two years below the statutory maximum. Two points on that. First, the fact that the government recommended a sentence that was less than what the court ultimately imposed is not an indication that the sentence imposed was unreasonable. It's just like when the court says, the holdings say, if an appellate judge thinks a lesser sentence would be reasonable, that alone is insufficient to reverse. Well, if this particular prosecutor thought a lesser sentence would have been reasonable, that does not mean the sentence imposed was unreasonable. And when the prosecutor did suggest 216 months, Judge Hittner immediately rebuffed him and said, did you read paragraph 8 of the PSR? Paragraph 8 of the PSR is where the defendant admitted he had molested his own brothers and recorded it in images that were part of his relevant conduct. Judge Hittner clearly was offended by the defendant's conduct. So the prosecutor said, well, 216 months, that takes into account the fact that he has no criminal history. And then Judge Hittner said, well, he hasn't been charged with it, but he's admitted that's a crime, what he admitted. So the court was clearly considering the history and characteristics of the defendant, which is a 3553A factor. On multiple occasions, the district court went through the victim impact statements. He quoted from them. He said, I want this on the record for appellate purposes. That's a direct quote. For appellate purposes. And he went through the effect that child pornography offenses have on the victims, which are often lifelong trauma. That's a focus on the nature of the offense. Also a 3553A factor. So you have nature of the offense, history and characteristics of the defendant, potentially uncharged criminal conduct. All of these are permissible factors. The court does not have to say, I'm considering this 3553A factor. I'm considering this. It doesn't have to go through a laundry list of the factors and explain how they apply or don't apply in order for the court to understand, for this court to understand what the district court was doing. So I think the district court's explanation was more than sufficient. And to the extent Mr. Quintanilla relies on the cases from the Second Circuit, again, Miller specifically rejected the Second Circuit decision in Dorvey that he cites and said, respectfully, we disagree with that decision. The Second Circuit didn't even apply a presumption of reasonableness. The Fifth Circuit decisions do. The defendants in those cases were very different. They had, unlike our situation here, you have Mr. Quintanilla who admitted to sexual contact with children, abusing his brothers. He admitted to producing child pornography because he recorded the abuse. He admitted to distributing child pornography. And he admitted to participating in these child pornography community. He's on record, or his text messages show that he was in these chat rooms saying, hey, anyone want to trade vids? So this is a defendant, even though he is a young age and doesn't have any prior convictions, committed a very serious offense and he got a very serious sentence. That was fully justified. To the extent that the defendant is arguing a procedural error, the same reasons apply as far as what the district court was trying to do, considering history and characteristics of the defendant, nature of defense, et cetera. But he didn't object to an inadequate explanation on procedural grounds. So we're on plain error. Is there any evidence in the record that he would not have pled guilty if he There's no indication, there's no evidence to support that, Your Honor. That goes back to what I said about when the PSR said there's a waiver, he didn't object, never tried to withdraw his plea. On the contrary, he pleaded guilty to count two of the indictment in return for more serious offenses being dismissed. He was charged in count one with sexual exploitation of a minor, which carried a maximum of 30 years, and a minimum of 15. So by pleading guilty to count two, transportation, he limited his sentencing exposure to a minimum of five and a maximum of 20. So there is nothing in the record to suggest, because he made no statements to that effect, that, hey, had I fully understood there was a waiver, I would not have pleaded guilty. On the issue of lifetime term of supervision, at least, oh, just one, I'm sorry, one quick point on that procedural error. There's also no indication, which this court requires, no indication that the district court would have imposed a lesser sentence had there been a more extensive explanation. That's Mondragon-Santiago in numerous cases that I've cited in my brief for that proposition. That's the third and fourth prongs of plain error, which he hasn't even addressed, the third and fourth prongs of plain error. But where you can't show a reasonable probability of a lesser sentence with a more complete explanation, you lose on plain error review on the procedural aspect of it. Just on the lifetime term of supervised release, the key cases there are Alvarado and Fraga. Key difference being, in both of those cases, the district court clearly indicated that it always imposes or nearly always imposes lifetime term of supervised release. And it defaults or automatically imposes that. We don't have that here. Judge Hittner didn't say anything about automatically imposing a life term. The government requested a life term, but there was no indication that it automatically does that. And when Alvarado and Fraga are distinguished on that grounds, this court has affirmed. That's cases like Orta, Smith, Carpenter, also cited in my brief there. The lifetime term of supervised release was also the guidelines recommendation. So it's a guidelines sentence. Again, should be presumed reasonable. Turning quickly, as my time runs down to restitution, again, on plain error review on the restitution, because Mr. Quintanilla did not object to the There cannot be a clear or obvious error here. There just can't because of the cases I've cited in my brief. Leal, Tejero, Barnett, Musgraves. The defendant has not distinguished those at all, has not even addressed them, either in his oral argument or in his reply brief. In all of those cases, the defendant alleged the district court failed to conduct a paroline proximate cause analysis. In all of those cases, just like here, the district court had detailed victim impact statements and victim requests for restitution that were attached to the PSR as addenda and were adopted by the district court. In those victim impact statements, the victims addressed paroline, mentioned paroline, delineated their total losses, demonstrated the causal connection between offenders who possess and transport child pornography and how that re-traumatizes the victims and the causal connection there. The amounts awarded and requested and awarded by the district court were very low numbers. They were a small fraction of the total amount, less than 1%. In this case, it's less than half of 1%, 0.3% of the total losses were awarded, the $7,500 and $10,000 amounts. There was no showing, this court said, in all those cases, there was no showing that the district court's award of such a small number resulted in double recovery for the defendants, or excuse me, double recovery by the defendant was going to be responsible for paying amounts that were unnecessary or undue. That is contrary to the cases Mr. Quintanilla relies on in his brief, largely Winchell and West. The time is running out. In both of those cases, Winchell, there was a $1.4 million award, almost the total amount of the loss. The government conceded error in that case, and there was no discussion of victim impact statements. West, the court awarded $6,000, but he did so based on an inapplicable statute, and the victim never requested restitution. So the amount was untethered to a legal basis or evidence, and this court reversed. None of those circumstances are present here. The restitution award is fully supported. There's definitely no clear or obvious error under plain error review, and the district court's explanation was more than sufficient, and the government asked that the court dismiss or just affirm in its entirety. Thank you, Your Honors. Thank you, Mr. Reed. Mr. DeMaria for rebuttal. Thank you, Your Honor. I'll begin briefly with the supervised release. On supervised release, authorization is not explanation. Alvarado and Fraga require an individualized justification for a lifetime term, and there simply was none articulating reasons for a lifetime term of supervised relief. What do the guidelines say about that? Pre-November 1, 2025, the guidelines recommended a lifetime term. Since November 1, 2025, they no longer recommend a lifetime term. But the guidelines are just a starting point, Your Honor, as the court knows. It still requires explanation, and there's a rebuttable presumption that it is adequate. But again, the law requires explanation. Now, going back to the appellate waiver, when a defendant hears the words, appeal any sentences, some circumstances suggest breath, not a single narrow exception. And at a minimum, I would argue that that introduced ambiguity into the proceedings, and that ambiguity should be held against the government. I will also note in terms of my brother raised this, the third and fourth elements of plain error, that when a defendant must be able to trust what a U.S. District Court judge says, and we also, the government has a role as guardian of the public interest to carefully scrutinize a proceeding, and if something is amiss, the government absolutely should object and say, hey, Your Honor, I just want to clarify for the record if the court could review page such and such and the appellate waiver to make sure the defendant understands we did not have that here. Under Jacobs, from this court, the question is whether the misstatement affected his understanding at the time of the plea. It's not whether or not his understanding changed at the time of the PSR or at the time of sentencing. And Rule 11 says as much, before accepting a plea of guilty, the judge must ensure. And so I would argue anything after the rearrangement does not bear on that, Your Honors. And I would also argue that, and the court asked just to clarify as well, enforceability, of course, is reviewed de novo and plain error governs the distinct Rule 11 inquiry. But again, as to whether or not he moved to withdraw, I would argue respectfully that is irrelevant. And going back again, my whole issue, and I told the court, it runs through all of the issues in my brief, that pursuant to Mondragon-Santiago 3553C requires an explanation duty, even if you're sentencing within the guidelines. I know the government touched on, hey, the guidelines are actually 360. Now, sure they were 360, but it was capped at 240 by statute. So it's not like the judge varied downwards from 360 to 240. Basically, the guideline became 240. And again, just going through, and I would ask the court to just go through the sentencing submissions. It really seemed to me as though the judge was reviewing them for the first time, right as he was sentencing Mr. Quintanilla. I don't think this was a situation where he's in his chambers, he says, let's go down your memo. That's at page four. At page five, he said, this is Ms. Awad's defense counsel. What is it? Sentencing memorandum. So he didn't even, you know, that suggests he's reviewing all of this for the first time. And I would argue that made reasons all the more. And again, the common thread throughout my entire submissions is simple. A sentence must rest on reasons. The sentencing court actually gave. And on this record, the reasons are missing. And again, my request is very modest. Let's just remand it back down to the district court and have the judge give a proper explanation on each issue. And perhaps in reasoning and coming to a proper explanation, the court may give a lighter sentence potentially. Except to any questions, that concludes my submissions. Thank you, Mr. DeMaria, for your cases under submission. Thank you.